## MORSE DRYDOCK & REPAIR COMPANY *v.* STEAMSHIP NORTHERN STAR, ETC., ET AL.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 326. Argued May 6, 7, 1926.—Decided June 7, 1926.

1. Subsection R of § 30 of the Ship Mortgage Act of June 5, 1920, providing that nothing therein shall be construed to confer a lien for repairs when the furnisher by exercise of reasonable diligence could have ascertained that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs was without authority to bind the vessel therefor, does not attempt to forbid a lien for repairs simply because the owner has stipulated with a mortgagee not to give any paramount security on the ship; the most that such a stipulation can do is to postpone the claim of the party chargeable with notice of it to that of the mortgagee. P. 553.

2. Under the Ship Mortgage Act of June 5, 1920, a maritime lien for repairs ordered by the owner takes precedence over a mortgage of the ship which was executed, and recorded in the office of the Collector, before the repairs were made, and a certified copy of which was kept with the ship's papers since before that time, but which was not endorsed upon the ship's papers by the Collector,

the Act requiring such an endorsement in order that the mortgage may be valid against persons not having actual notice.   P. 555.

7 Fed. (2d) 505, reversed.

CERTIORARI to a decree of the Circuit Court of Appeals which affirmed a decree of the District Court (295 Fed. 366) sustaining the prior claim of an intervening mortgagee, in a suit to enforce a maritime lien for repairs against a vessel.

*Mr. Arthur H. Stetson* for petitioner.

*Mr. Frank A. Bernero,* with whom *Mr. Gerson C. Young* was on the brief, for respondents.

MR. JUSTICE HOLMES delivered the opinion of the Court.

The petitioner libelled the Northern Star alleging a lien for repairs furnished in New York, the home port of the vessel.   The intervenor, Luber, set up a mortgage from the owner, the American Star Line, Inc., for over a million dollars, and the question here is which is entitled to priority.   Both the District Court and the Circuit Court of Appeals decided in favor of the mortgage.   295 Fed. 366.   7 Fed. (2d) 505.   A writ of certiorari was granted by this Court.   268 U. S. 683.

The mortgage, originally given to the United States when the ship was purchased, was executed and recorded on August 11, 1920, and a certified copy was left and kept with the ship's papers from September 23, 1920, but it was not endorsed upon the ship's papers until June 27, 1921.   The repairs were made between November 14 and November 27, 1920, at the owner's request.   One of the covenants of the mortgage was not to suffer or permit to be continued any lien that might have priority over the mortgage, and in any event within fifteen days after the same became due to satisfy it.   Another covenant, probably shaped before the then recent Ship Mortgage Act,

1920, June 5, 1920, c. 250, § 30, 41 Stat. 988, 1000, re- quired the mortgagor to carry a certified copy of the mortgage with the ship's papers, and to take other appropriate steps to give notice that the owner had no right to permit to be imposed on the vessel any lien superior to the mortgage. On these facts we feel no doubt that the petitioner got a lien upon the ship, as was assumed by the Circuit Court of Appeals. Ship Mortgage Act, Subsection P, 41 Stat. 1005.

The owner of course had ' authority to bind the vessel ' by virtue of his title without the aid of statute. The only importance of the statute was to get rid of the necessity for a special contract or for evidence that credit was given to the vessel. Subsection R, it is true, after providing that certain officers shall be included among those presumed to have authority from the owner to create a lien for supplies, goes on that " nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor." But even if this language be construed as dealing with anything more than the authority of a third person to represent the owner so as to create a lien, still when supplies are ordered by the owner the statute does not attempt to forbid a lien simply because the owner has contracted with a mortgagee not to give any paramount security on the ship. The most that such a contract can do is to postpone the claim of a party chargeable with notice of it to that of the mortgagee.

The petitioner's lien was valid and on the other hand there is equally little doubt that the mortgage was valid as soon as it was executed and recorded, before the endorsement upon the ship's papers. This view seems to

us plainly to be taken in Subsections C and D of the Act. So the question more precisely stated is whether the above-mentioned covenants postponed the lien to the mortgage security, as they would seem to do on the facts of the case but for the language of the statute that we shall quote:

The statute, after requiring the instrument to be recorded in the office of the Collector of Customs of the port of documentation, in order to be valid against persons not having actual notice, (Subsection C,) provides in Subsection D, (a) that "A valid mortgage which . . . , shall in addition have, in respect to such vessel and as of the date of the compliance with all the provisions of this subdivision, the preferred status given by the provisions of Subsection M, if—(1) the mortgage is indorsed upon the vessel's documents in accordance with the provision of this section," with other conditions, (b) upon compliance with which the mortgage is called a ' preferred mortgage.' Then follows in (c) a statement of what shall be indorsed. By (d) the indorsement is to be made by the collector of customs of the port of documentation or by the collector of any port in which the vessel is found if so directed by the former, and no clearance is to be issued to the vessel until such indorsement is made. Subsection M gives priority to a preferred mortgage over all claims against the vessel " except (1) preferred maritime liens and (2) expenses and fees allowed and costs taxed, by the court." By (a) of the subsection " ' preferred maritime lien ' means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this section." Obviously the statute taken literally may work harshly if by any oversight or otherwise the collector does not do his duty, and excellent reasons could be found for charging the petitioner with notice of a document that both was recorded and was kept with the ship's papers.

But the words of the statute seem to us too clear to be escaped. The mortgage is made preferred only upon compliance with all the conditions specified, one of which is indorsement, and the maritime lien is preferred if it arises before the recording and indorsement of the mortgage. We see no room for construction, and there is nothing for the courts to do but to bow their heads and obey.

*Decree reversed.*

---

The separate opinion of MR. JUSTICE McREYNOLDS.

The repairs for which petitioner claims a lien were made at the vessel's home port, and there is nothing whatever to show any effort to bind her for their payment by special agreement. Under such circumstances the general maritime law gives no lien. If the repair company acquired one it arose from the provisions of the Act of 1920, and not otherwise. While Subsection P, § 30 of that Act declares generally that any person furnishing repairs shall have a lien on the vessel without allegation or proof that credit was extended to her, Subsection R of the same section expressly provides that " nothing in this *section* shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel, therefor."

When the petitioner furnished the repairs at the home port there was on the public record in the Collector's office at that same port a duly-authenticated bill of sale and a purchase money mortgage (a copy of the latter was also on board), which disclosed an express agreement by the owner " not to suffer nor permit to be continued any lien, encumbrance or charge which has or might have pri-

ority over this mortgage of the vessel." The petitioner had easy access to these instruments and, by exercising slight diligence, might have ascertained their contents. They deprived the owner of both right and authority, within the true intent of the statute, to create the lien now claimed by the repair company. The purpose of this enactment was to protect honest furnishers who exercise diligence, and not to offer a wide-opened door for crooked transactions.

The trial judge held that under the circumstances the petitioner acquired no lien. I agree with him, and even venture to think that the argument in support of his conclusion cannot be vaporized by mere negation.