## THE SMITH & TERRY NO. 3.

## TEBO YACHT BASIN CO. v. UNITED STATES.

Circuit-Court of Appeals, Second Circuit.
June 18, 1928.

No. 324.

1. **Shipping** ⬅⟫33—Government's mortgage for unpaid purchase price of barge did not lose priority over libels for repairs and towage, because barge was resold and not redocumented in new home port (46 USCA § 39; Ship Mortgage Act 1920, § 30, subsecs. B(4), O(a); 46 USCA §§ 911, 961).

Mortgage of the United States on barge for balance of unpaid purchase price *held* entitled to priority as against decrees based on libels for repairs and towage, as against contention that barge was no longer a vessel of the United States, because she had been sold to a Delaware corporation and had not been redocumented in her new home port under Rev. St. § 4170, as amended by Act July 5, 1884, c. 221 (46 USCA § 39), where Shipping Board did not approve surrender of the documents subsequent to the transfer of title, as required by Ship Mortgage Act 1920, § 30, subsec. O(a), 46 USCA § 961, and § 30, subsec. B(4), 46 USCA § 911.

2. **Shipping** ⬅⟫33—Statute indicates intention to protect mortgagee if mortgage has once been registered on United States vessel (Ship Mortgage Act 1920, § 30, subsec. O(a); 46 USCA § 961).

Ship Mortgage Act 1920, § 30, subsec. O(a), 46 USCA § 961, indicates an intention to protect the mortgagee, if his mortgage has once been registered, on a vessel of the United States; the phrase "approval of the board," used in statute, after obtaining the mortgagee's consent to a surrender of the documents, presupposing a surrender in conformity to law, and failure to properly document the vessel not affecting title thereto, but affecting her status as a vessel of the United States.

3. **Towage** ⬅⟫9—Libelant, obtaining pro confesso decree for towage, did not obtain priority over mortgage for unpaid purchase price of barge.

That one filing libel for towage charges against barge obtained a pro confesso decree therefor in its favor did not give it any greater priority as against mortgage of United States for balance of unpaid purchase price on the barge, where the libel was not contested.

Appeal from the District Court of the United States for the Eastern District of New York.

Libel by the Tebo Yacht Basin Company against the barge Smith & Terry No. 3, with the United States of America as claimant, to recover for repairs, and by the P. Dougherty Company for towage charges. Decrees were entered in favor of the libelants. Later a final decree (16 F.(2d) 613) was entered, preferring a mortgage of the United States of America on the barge Smith & Terry No. 3, from which both libelants appeal. Decree affirmed.

Haight, Smith, Griffin & Deming, of New York City, for appellant Tebo Yacht Basin Co.

Bigham, Englar & Jones, of New York City (W. H. Woolley and Stanley W. Schaefer, both of New York City, of counsel), for appellant P. Dougherty Co.

Charles H. Tuttle, U. S. Atty., of New York City (Charles E. Wythe, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. [1] The appellant, Tebo Yacht Basin Company, obtained a decree against the barge Smith & Terry No. 3 in rem for repairs, supplies, and assistance furnished to it. P. Dougherty & Co. also obtained a decree pro confesso for towage services. The barge was sold by order of the court and the money deposited in the registry of the court.

The United States of America sold the barge Smith & Terry No. 3 to Smith & Terry, Inc., a New York corporation, receiving therefor cash and seven installment notes, the payment of which was secured by a preferred mortgage on the barge. Title passed May 13, 1921. The mortgage was recorded in New York and indorsed on the ship's documents· at the New York custom house, and a copy of the mortgage was placed with the ship's papers. By the terms of this mortgage, Smith & Terry, Inc., agreed not to sell or transfer the vessel, or any interest therein, without first obtaining the written consent of the mortgagee.

Request was made on May 24, 1922, to the Shipping Board, for permission to transfer the title to the vessel to the Smith & Terry Navigation Company, Inc., a Delaware corporation. On July 27, 1922, the Shipping Board wrote as follows:

"United States Shipping Board Emergency Fleet Corporation.

"Washington, July 27, 1922.

"Smith & Terry, Inc., 11 Broadway, New York—Gentlemen: In accord with your favor of May 24th, authority is hereby given you to transfer the title of barge No. 3 to the Smith & Terry Navigation Company, Inc., provided the present registered title owner remains liable with the new company under the mortgage and notes the Board holds as security for the unpaid purchase price of the vessel. You will submit transfer papers for approval.

"Very truly yours,

"H. S. Kimball,   Vice President.

"Above authorization approved by the Board of Commissioners under date of ———, 1922.

"O. K.   [Signed]

"Frederick I. Thompson."

This letter instructed Smith & Terry, Inc., to submit transfer papers for approval. On August 15, 1922, the document for the barge was surrendered at the New York custom house, and a new document issued there showing ownership, not in the grantee named in the bill of sale, or as named in the letter referred to, but in the name of Smith &

Terry Navigation Corporation. This document bore the indorsement of the mortgage held by the appellee. On November 16, 1922, copies of the documents showing the transfer requested in the letter were sent to the Shipping Board. On January 19, 1923, Smith & Terry Navigation Company, Inc., indorsed the notes outstanding upon the mortgage and assumed joint and several liability with Smith & Terry, Inc., which was in accordance with the condition required by the Shipping Board. The Shipping Board took no other action at any time with reference to such surrender. The repairs of the Tebo Yacht Basin Company were furnished between August 18 and August 31, 1922, after the documentation of the vessel in the name of Smith & Terry Navigation Company, Inc. The towage services were rendered between August 10 and September 1, 1923. The sale of the barge by the marshal took place February 17, 1925.

· The contention of the appellants is that the mortgage of the United States has lost its preferred status, and that the barge is no longer a vessel of the United States, because she was sold to a Delaware corporation and had not been redocumented in her new home port. Section 4170 of the Revised Statutes, as amended by chapter 221, 23 Stat. 118, provides that:

"Whenever any vessel, which has been registered, is in whole or in part, sold or transferred to a citizen of the United States, or is altered in form or burden, * * * the vessel shall be registered anew, by her former name, according to the directions hereinbefore contained, otherwise she shall cease to be deemed a vessel of the United States. The former certificate of registry of such vessel shall be delivered up to the collector to whom application for such new registry is made, at the time that the same is made, to be by him transmitted to the Commissioner of Navigation, who shall cause the same to be canceled. In every such case of sale or transfer, there shall be some instrument of writing, in the nature of a bill of sale * * *; otherwise the vessel shall be incapable of being so registered anew." 46 USCA § 39; Comp. St. § 7751.

If the Shipping Board did not approve the surrender of the documents subsequent to the transfer of title as required by subsection B, subdivision (a) of the Ship Mortgage Act of 1920 (41 Stat. 1004, § 30 [46 USCA § 961; Comp. St. § 8146¼oo]), then the argument is without force. Subsection B, subdivision 4 (46 USCA § 911; Comp. St. § 8146¼k), describes a vessel of

the United States as meaning any vessel documented under the laws of the United States, and that such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the board, and subsection O, subdivision (a), provides that the documents of a vessel of the United States covered by a preferred mortgage may not be surrendered without the approval of the board, and that the board shall refuse approval unless the mortgagee consents to such surrender. This approval is an administrative act of the Board, and these provisions of the Ship Mortgage Act make an exception to section 4170 of the Revised Statutes, where the vessel is covered by a preferred mortgage. Unless and until the Shipping Board approves and grants consent, a transfer may not be made. [2] The Shipping Board did consent to the transfer of title, but this imposed no burden upon it as mortgagee of seeing that the conveyance was registered in the proper port for the vessel. The statute above indicates the intention to protect the mortgagee, if his mortgage has once been registered upon a vessel of the United States. Failure to properly document the vessel by the owner when the vessel was sold to a new owner at another port in no way affected the status or validity of the mortgage. The phrase "approval of the Board," used in the statute, after obtaining the mortgagee's consent to a surrender of the documents, presupposes a surrender in conformity to law. Failure to properly document the vessel does not affect the title to the vessel, but affects her status as a vessel of the United States. Weston v. Penniman, Fed. Cas., No. 17,455. If the new documents had been properly filed in Delaware, the mortgage would have priority under subsection M (a) (2) of the Ship Mortgage Act, which provides:

"A lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage." 46 USCA § 953; Comp. St. § 8146¼ nnn.

These claims only have priority over a prior recorded ship mortgage, but the lien of the appellant is not included in any of these.

The Lincoln Land (C. C. A.) 295 F. 358, is distinguishable from the case at bar, for here the mortgage was made and properly registered before the change of title. The court in that case recognized that distinction, saying:

"Inasmuch as the Lincoln Land was not registered, enrolled, or licensed, permanently or temporarily, at any port by the libelants, or by the Indian Transportation & Navigation Company, Inc., until some time after the mortgage had been given and recorded, it becomes unnecessary in this case to determine the extent to which the provisions of R. S. § 4192 [46 USCA § 921 note; Comp. St. § 7778], have been modified in this respect by the Ship Mortgage Act."

The Susana (C. C. A.) 2 F.(2d) 410, is to be distinguished for the same reason.

Appellant refers to The Steel Inventor v. Woolsey (C. C. A.) 24 F.(2d) 657, 1928 A. M. C. 513, and U. S. v. Thekla, 266 U. S. 328, 45 S. Ct. 112, 69 L. Ed. 313, to support the claim that consent to the transfer of title by the Board as mortgagee involved approval of surrender of documents by the Board as an administrative body. There the United States was acting in one capacity only, as litigant. Here it has the dual capacity of a private mortgagee and a public administrative body. In Morse D. D. & Repair Co. v. S. S. Northern Star, 271 U. S. 552, 46 S. Ct. 589, 70 L. Ed. 1082, a preferred status over a lien for repairs was denied to a mortgagee, where the mortgage was executed and recorded in the office of the collector and a certified copy was kept in the ship's papers, but was not indorsed by the collector; the act requiring such indorsement in order that the mortgage may be valid as against persons not having actual notice.

Relying on that case, it is argued here that, if the government adopts the new documentation, it follows that it must have given approval to the surrender of the old documents as an administrative body. But it was wholly unnecessary for the government to rely on the new document in any particular, since subsection B, subdivision 4, provides that a vessel documented under the laws of the United States "shall be held to continue to be so documented until its documents are surrendered with the approval of the board." The rule in United States v. L. R. & J. A. Smith, 256 U. S. 11, 41 S. Ct. 413, 65 L. Ed. 808, would be applicable only if there was some act or circumstance here sufficient to constitute surrender to the administrative body. That case holds that the United States can be bound without writing or formal action with regard to liability arising out of contract. The Ship Mortgage Act

requires action by the Board, and the letter of July 27th cannot be considered or construed as its action. Minn. & St. Louis R. R. Co. v. Peoria & Pekin 'Union Ry. Co., 270 U. S. 580, 46 S. Ct. 402, 70 L. Ed. 743; State ex rel. Kopriva Larson, 48 N. D. 1144, 189 N. W. 626.

[3] The fact that the appellant P. Dougherty Company obtained a pro confesso decree on April 5, 1925, in its favor, did not give it any greater priority, because the libel was not contested. The mortgage is preferred as against it.

Decree affirmed.