## THE BERGEN.

### No. 21.

District Court, S. D. California, S. D.
April 16, 1931.

Gibson, Dunn & Crutcher, of Los Angeles, Cal., for libelant.

Gray, Cary, Ames & Driscoll, of San Diego, Cal., for respondent.

McCORMICK, District Judge.

This libel has been under consideration for some time. At the hearing and until the libelant cited Morse Drydock & Repair Co. v. Northern Star, 271 U. S. 552, 46 S. Ct. 589, 70 L. Ed. 1082, there appeared to be no question as to the invalidity and unenforceability of a maritime lien upon the vessel Bergen, in the light of the evidence and the provisions of the Ship Mortgage Act 1920 (46 USCA § 911 et seq.), and particularly subsection R of section 30 thereof (46 USCA § 973). The language used by Justice Holmes in the main opinion of the Northern Star, supra, has caused no little uncertainty

as to the proper rule for this court to follow in the decision of this matter. Upon mature deliberation of the evidence and analysis of the Northern Star Case, as well as upon examination of all of the other decisions cited by proctors, I have concluded that the language of Justice Holmes that has caused the uncertainty is dicta and does not control this libel. The ruling in the Northern Star was that the mortgage under consideration lost its preferred status and its paramount feature over other liens because of the failure of the mortgagee to comply with the conditions specified in the Ship Mortgage Act. It was therefore unnecessary to the decision for the court to employ the language of Justice Holmes that affords the libelant herein the only refuge that it could possibly claim from the clear and unambiguous verbiage of the Ship Mortgage Act, and the explicit terms of the mortgage involved here. The separate opinion of Justice McReynolds in the Northern Star is an indication that unanimity did not exist in the Supreme Court as to the ineffectiveness of the clear language of the Ship Mortgage Act to defeat liens such as that claimed by the libelant herein.

In the proceeding at bar, the mortgagor was the owner of the vessel Bergen, and the mortgage was given to secure the payment of the purchase price of the ship. All of the formalities required by the Ship Mortgage Act were complied with, and everything required to be done to give the mortgage the preferred status was accomplished. In article III of the mortgage it is provided: "Neither the Mortgagor, nor the Master of the Vessel, shall have any right, power or authority to create, incur, or permit to be placed or imposed upon the property, subject or to become subject to his mortgage, any lien whatsoever other than for crew's wages, wages of stevedores, and salvage." And in article VI of the mortgage, it is stated: "The Mortgagor shall comply with and satisfy all the provisions of the 'Ship Mortgage Act, 1920,' Vol. 41 U. S. Statutes at Large 1005," which read as follows:

"Subsection P. Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel.

"Subsection Q. The following persons shall be presumed to have authority from the owner to procure repairs, supplies, towage, use of dry dock or marine railway, and other necessaries for the vessel: The managing owner, ship's husband, master, or any person to whom the management of the vessel at the port of supply is intrusted. No person tortiously or unlawfully in possession or charge of a vessel shall have authority to bind the vessel.

"Subsection R. The officers and agents of a vessel specified in subsection Q shall be taken to include such officers and agents when appointed by a charterer, by an owner pro hac vice, or by an agreed purchaser in possession of the vessel; but nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other person, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

It is clear from the foregoing that, if libelant had exercised any diligence whatsoever it would have ascertained that the person ordering the supplies had by his own agreement in the documented and recorded mortgage precluded himself from making purchases that would operate to attach a lien against the ship or that would be effective in pledging the credit of the ship for the supplies. Common prudence would prompt one supplying merchandise to a ship in a transaction where it is sought to impose a maritime lien upon the vessel, to make some inquiry in the manner provided by statute to ascertain the ability of the person ordering the supplies to pledge the credit of the ship therefor. In this matter there is no evidence that the required diligence or prudence was exercised by the libelant and under such circumstances to hold that it is entitled to a maritime lien would be to render wholly ineffectual and entirely meaningless, the applicable subsection R of Section 30 of the Ship Mortgage Act, 1920.

The libelant is not entitled to a lien against the vessel Bergen under the stipulation of facts and the law applicable thereto and it is accordingly ordered that a decree be entered herein for the claimant and that the libel herein be dismissed, with costs. Proctors for claimant will accordingly prepare and present such decree under the rules of this court.