**POROBILO et al. v. TALIANCICH et al.**
**No. 8306.**

Circuit Court of Appeals, Fifth Circuit.
April 14, 1937.

Edwin H. Grace, of New Orleans, La., for appellants.

Walter Carroll and Geo. H. Terriberry, both of New Orleans, La., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

.Appellees, by original and intervening libels in rem filed in September, 1933, against the launch Buffalo sued for amounts due for supplies, for repairs, and for services as seaman's wages furnished to the launch by the authority and upon the order of one Bakalich, the then owner, and to establish and foreclose maritime liens therefor.

There were three claims: (1) That of the original libelant, Leopold Taliancich, for $548.77 for provisions alleged to have been furnished the launch at various times during 1931, 1932, and 1933. (2) That of Marie Antunica Taliancich, wife of Joe Taliancich, intervening on behalf of her minor son, Nicolas Antunica, for $462, balance of wages as seaman on the launch during 1931, 1932 and 1933. (3) The claim of Joe Taliancich for $150 for a gasifyer installed in January, 1932.

Claimants, appellants, contested the supply and wage claims as insufficiently proven as to amount, and denied that they had been incurred as claimed upon the authority of Bakalich and the credit of the vessel. As to the repair claims, while admitting that the gasifyer had been installed, and that money gotten from Joe Taliancich had paid for it, it was insisted that the money had been loaned to and paid out by Bakalich, and no maritime lien had arisen because of it.

All the claims of liens were contested on the further ground that Bakalich, though in possession of the launch under a bill of sale when the claimed liens arose, was in such possession subject to the payment of $2,000, the balance of the purchase price, and subject to an express condition in the bill of sale that he would not "sell, alienate, or in any wise encumber the vessel," and was therefore without authority to bind the vessel or to authorize the creation of liens upon it. There was also the defense of laches.

The testimony in the case was all taken by deposition. No witness appeared in person before the court. It showed that one Bakalich, by bill of sale of date August 3, 1931, took a transfer from Andrich, the owner of the Buffalo, reciting a consideration of $3,000, $1,000 paid in cash, and $2,000 in a promissory note due August 3, 1932; that Bakalich, being without funds to set him up in business, Joe Taliancich advanced him $500, and others of his country-men $525, while Joe Taliancich indorsed the $2,000 note. Nothing was paid on the note, and on August 9, 1933, Bakalich, in consideration of his release from the note, and the deposit by Andrich of $300 to pay debts incurred by Bakalich while he was owner, and in possession of the boat, reconveyed it to Andrich.

There was voluminous testimony of Leopold Taliancich and of others, in support of his claim that he had supplied meat and provisions to the vessel, and in further support of the claim receipts for deliveries signed by Bakalich were produced.

Supporting the claim of Nicolas Antunica there was the testimony of his mother and himself to Bakalich's employment of him, and to the amount still due and unpaid.

Bakalich was not called to testify. No one directly disputed the testimony of libelants. Such controversion as there was was indirect. As to Leopold's claim, it consisted in the testimony that the boat had been provisioned not by him, but by others, and that he had been paid for what he furnished. As to Nicolas Antunica, the controversion took the form of testimony tending to prove that his stepfather, Joe Taliancich, was a partner, and that he had worked for Bakalich as an accommodation to the partners and not as a seaman, whose wages were a charge upon the boat. There was also the testimony of one witness that Antunica's wages were to have been but 50 cents rather than $1, a day.

Joe Taliancich's claim was based on the undisputed fact that the gasifyer had been installed, and his testimony that he had paid for it. There was also general testimony as to the existence of the mortgage in favor of Andrich, and as to discussions between Andrich and Taliancich about giving Bakalich more time to pay, and there was testimony tending to prove that Andrich knew all along that claims were being incurred against the boat, and made no objection.

The District Judge found for libelants throughout. He filed precise and complete findings of fact and law which fully support their claims.

Appellant, calling our attention to the hardship upon Andrich, of charging the vessel with liens ranking his mortgage on account of claims which, resting in parol and all more than a year old, had not been asserted until the boat was taken back by Andrich, insists that since the testimony was

taken by deposition and not in open court, this court should examine the record and determine the merits of libelants' claims unaffected by the view of them the District Judge took. He insists that such an examination will show as to each claim, that the requisites of proof of maritime liens are wanting, and that the claim is not just or genuine. He insists too, that all of the libelants knew of the existence of the mortgage, and of the limitations on Bakalich's power to charge the boat, and ought not to be permitted to rank the mortgage.

As to the Taliancich claim for supplies, he urges (1) that the proof is insufficient to show that they were furnished to the boat in the amounts claimed, and (2) that the proof shows that such as were furnished have been paid for.

As to Antunica's claim, he insists that there is no sufficient proof that he was employed as a seaman for any definite time or period, none as to the wages he was to be paid, and none that he performed the services for which he claims pay as a seaman on the credit of the boat. He vigorously insists that Antunica was employed personally by Bakalich as a matter of accommodation, and looked to Bakalich alone, and not to the boat, for his pay.

As to Joe Taliancich, the claim is that he was no lienor, but a partner of Bakalich; that as he had loaned him $500 and indorsed a note in connection with the purchase, relying on Bakalich's personal credit, so he had advanced the $150 he sued for in the same personal way.

■ It will serve no useful purpose to set out the testimony as to each claim. It is sufficient to say of the claim of Leopold Taliancich for supplies, that the proof of furnishing the supplies to the vessel is clear, exact, and specific, and that while there is testimony as to payments made to him on Bakalich's account, these payments are completely and satisfactorily accounted for by the libelant as payments made on account of supplies furnished not to the vessel, but to Bakalich personally. The fact findings on this claim are approved.

■ As to Nicolas Antunica, no person denies either his testimony that he worked regularly and steadily on the boat, or the testimony of his mother as to the amount of payments received on account, and the amount still due. The positive testimony bearing on the amount he was to receive is that of one witness, who put Antunica's wages at 50 cents a day as opposed to his own of $1 a day. There is, too, the insistence that Joe Taliancich, his stepfather, was a partner in the enterprise, and that Antunica worked not for the boat, but as a matter of accommodation for Bakalich and his stepfather. But no one testifies that this was so, and it has no color in the evidence except such as may be given it by the inference appellant would draw from the advances of money made by Joe Taliancich and the general family nature of the fishing enterprise.

There is a claim, too, that for a part of the time Antunica claims to have worked, the boat was laid up. As to this the testimony shows that Antunica went to work in August, 1931, and worked until April, 1933. That in the summer of 1932 for two months or so the boat was not fishing, but during all that time, according to Antunica, he was working on the boat, painting and fitting it up, and getting and keeping it in shape for the next season. No one denies this. In the condition of the testimony we are bound to say that the case on this claim, too, must be affirmed.

■ As to Joe Taliancich, we think the matter stands differently. For whether he was or was not a partner of Bakalich, and there is considerable evidence that he was, it is perfectly clear, we think, that he did not furnish a gasifyer to the boat; he merely loaned Bakalich $150 to pay for its installation. We find no basis here for a lien. This claim is denied.

■ As to appellants' contention that the claims are barred by laches because not sooner pressed, there is evidence, not contradicted, that the claims were not pressed at the request of Bakalich, and of Andrich, the present owner of the boat, so as to give Bakalich an opportunity to work his indebtedness out.

■ Nor is the defense that the terms of the bill of sale, under which Bakalich held, prevented liens arising against the boat; any better taken. This was a mere personal covenant, operating as between Bakalich and Andrich. It did not, it could not, have the effect of preventing maritime liens from arising to secure claims otherwise entitled to such liens. Morse Dry Dock & Repair Co. v. Northern Star, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082; The J. E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345; 38 C.J. 1235; The South Coast, 251 U.S. 519, 40 S.Ct. 233, 64 L.Ed. 386; United

States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361.

The decree appealed from is therefore reversed as to the claim of Joe Taliancich, and affirmed as to the claims of Leopold Taliancich and Nicolas Antunica. The costs of the appeal are taxed one-half against Joe Taliancich, and one-half against appellants.