### THE SOUTHERN CROSS.
### THE PAN AMERICA.
#### Nos. 15421, 15433.

District Court, E. D. New York.
July 5, 1938.

Michael F. Walsh, U. S. Atty., of Brooklyn, N. Y. (William E. Collins, of New York City, of counsel), for libelant.

White & Case, of New York City (Hunt, Hill & Betts, of New York City, of counsel), for claimants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Charles R. Hickox and D. M. Tibbetts, both of New York City, of counsel), for Independent Bondholders Committee of Munson Steamship Line 6% Gold Bonds.

Crowell & Rouse, of New York City (E. Curtis Rouse and George L. Varian, both of New York City, of counsel), for Tietjen & Lang Dry Dock Co. and Robins Dry Dock & Repair Co. et al.

Bigham, Englar, Jones & Houston, of New York City (George S. Brengle, of New York City, of counsel), for Guaranty Trust Co. of New York.

BYERS, District Judge.

These cases are before the court on motions by the libelant to overrule exceptions, and to dismiss exceptive allegations filed by claimants and sundry interveners.

These pleadings are common to all such parties, but are separately presented. The causes are substantially identical, and one opinion will serve to dispose of both causes, so far as this motion is concerned.

The libelant, the United States of America, sold the Southern Cross to Munson Steamship Line on December 5, 1925; that is to say, a bill of sale dated November 28, 1925, was delivered and recorded in the office of the Collector of Customs of the Port of New York on the first named day, when registry was issued and a preferred ship mortgage, dated contemporaneously with the bill of sale, in the sum of $769,-500.00 at 4½% interest, was executed, delivered and recorded in the same office.

Payments of notes for which the mortgage was given as security have been made as to $181,900.00, and the balance of principal is in default. Some interest on the notes has been paid. This cause in rem has for its object the foreclosure of that mortgage.

In 1934, the mortgagor sought reorganization pursuant to Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, and trustees were duly appointed by the United States District Court for the Southern District of New York, who have continued until this time to administer the company.

The trustees make claim to the vessel. Guaranty Trust Company, as trustee under a mortgage which in terms is understood to be subordinate to that described in the libel, has intervened for the purpose of contesting the preferred status of the Government's mortgage.

Tietjen & Lang Dry Dock Company, and Robins Dry Dock & Repair Company, et al., maritime lienors, have also intervened, and offer a like contention.

It does not appear that the liens which the latter assert were incurred until subsequent to the execution, delivery and recording of libelant's mortgage, and there was no failure of indorsement upon the ship's papers. In other words, so far as these particular interveners are concerned, their position is in clear contrast to that of the prevailing lienor in Morse Dry Dock & Repair Co. v. The Northern Star, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082.

The questions presented are readily divisible into the exceptions which are addressed to one proposition; namely, that it appears on the face of the libel that the instrument pleaded is not a Preferred Mortgage by statutory exclusion; and the exceptive allegations, which would impose upon the court the duty of ascertaining what was done in respect of the documentation of the vessel as to her home port, by the mortgagor as owner; and whether the requirements of the law were met so as to constitute the Southern Cross a vessel of

the United States at the time of the execution, delivery and recording of the mortgage.

These are not matters within the knowledge of the court, and no conclusion can be reached with respect to their bearing upon the controversy without an examination of the documents and the possible taking of testimony concerning, among other things, a certain action taken by the Commissioner of Navigation under date of December 2, 1925, referred to in the trustees' brief but not appearing in the pleadings under examination.

So far as this cause is concerned, the exceptive allegations are deemed not to be available to accomplish their avowed purpose, and the motion to dismiss will be granted, without prejudice to the right of the several interveners to plead these matters in their respective answers if they be so advised.

The exception is buttressed by much interesting discussion in the briefs. If logic were an end in itself, the argument in support of the contention, that since the United States is not a citizen of itself, the mortgage pleaded cannot have a preferred status (Title 46, U.S.C., § 922, subd. 5, 46 U.S.C.A. § 922, subd. 5) and hence the court is without jurisdiction, would at least be plausible. But when logic and common sense are approaching head-on, it is not the latter which must give way.

The only decision on the subject is The Northern No. 41, D.C., 297 F. 343, which is squarely against the exception.

The conclusion reached in that case has survived the criticism to which it has been subjected by counsel opposed to this motion, and the decision could safely be followed without further discussion.

There are, however, considerations peculiar to this case, which should be mentioned, although they have not been discussed in the briefs:

In the first place, the argument which would seek to destroy the libelant's cause is entirely devoid of any possible trace of merit. The trustees occupy no higher coign of disputation than the mortgagor. The libel discloses that the latter paid three of its notes, to that extent performing a written and unambiguous undertaking to repay a debt to the United States secured by a valid mortgage ostensibly possessing the preferred status contemplated by the law.

It would have difficulty in now securing a hearing for the proposition, that the instrument which it executed in apparent conformity with the statute and in reliance upon the Government's capacity thereunder to deal with it, is something other than what it purports to be, for the reason that the Government is not a citizen of the United States.

Its trustees in reorganization can scarcely hope to command a more sympathetic audience when advancing so anemic a contention.

No other intervener professes to have been lured into a position which has been rendered unfavorable because of the asserted incapacity of the Government to acquire a valid mortgage upon a vessel, having preferred status.

Since these things are true, it must be clear that, even if the argument for the exception were completely logical, in view of the language of the libel, it would still be completely unconvincing. To yield, however, to its persuasion, would require that there be attributed to Congress a purpose to create a new form of security to attract private capital to support and develop the merchant marine, and at the same time to deny to the Government a like degree of protection for public funds similarly enlisted.

It is impossible for this court so to interpret the excerpts from the proceedings before the Committee on Merchant Marine, whose deliberations yielded the statute to which attention here is drawn. Industrious counsel have quoted from these proceedings, after urging that, because the statute is not ambiguous, resort thereto may not be had by the court.

That again is a sound assertion, and there is authority for it, but here one is dealing with the argument that the Government was deliberately excluded as a lending agent upon the basis of a preferred ship mortgage, and it is proper to seek to know why that result should have been achieved—if it was.

The answer that it was not may well rest in what was said to the Committee by Judge Hough on September 25, 1919, as follows:

"* * * If the sole object to be brought about by this legislation were to secure the government in respect of its claim for the deferred payment portion of the price at which it is to sell the vessels

now owned by it, I submit, Sirs, that this bill is wholly unnecessary. There is no more firmly established doctrine of historic law nor none so firmly embodied in the statutes of the United States than that a debt due to the sovereign is preferred and superior to the debt due a citizen or a subject. No proposition of government law has been more obviously brought to my attention, as a United States Judge, than that; and if the only object were to secure the government's claim or lien against the vessels which it intends to sell, it is perfectly proper to put the grounds of superiority not in the nature of the security but in the nature of the creditor, namely, the sovereign, as has been done and is done by existing statutes, and there will be statutes, too, in respect to almost every other debt due to the government of the United States."

"Judge Hough. If the common report along the water front of New York is true, that what this bill is really for is to help the government get rid of its boats, I do not think you need this in the least; all you need is to exercise the sovereign power and to hold on to your sovereign rights. I am in favor of that very much."

"Mr. Alexander. But it would require legislation."

"Judge Hough. It would require legislation because such a thing has never been done before. But I see no difference whatever in doing that in respect to these boats and doing it in respect to every conceivable kind of debt, which is a fact under existing statutes."

The Committee may have indeed accepted the view first above quoted from so eminent an authority, that the bill was "wholly unnecessary" to constitute a "debt due to the sovereign * * * preferred and superior to the debt due a citizen or a subject."

An amendment to this particular subdivision of the law in 1935 would seem to be consistent with such an understanding. The Reconstruction Finance Corporation was stated thereby to "be deemed a citizen of the United States".

At that time Congress knew of the many purchase money mortgages (again to quote Judge Hough) which the Government had taken in connection with the sale of ships, and if it had been considered necessary to validate them by conferring upon the sovereign that which had always

pertained to it, according to the testimony quoted, the opportunity was present to legislate to that end.

The omission must be deemed to have been deliberate, and consistent with an understanding on the part of Congress that there never had been a legislative intention to withhold from the Government—the sovereign—the capacity to secure the payment of such debts as are here involved through the instrumentality of a ship mortgage which, if conforming to the statute in all essential respects, should enjoy the preferred status therein described.

It follows that the motion to overrule the exception to the libel and to dismiss the exceptive allegations without prejudice, is granted.

Settle order.