**PIERSIDE TERMINAL OPERATORS, INC., Plaintiff, Eagle, Inc., et al., Intervenors,**

**v.**

**M/V FLORIDIAN, her engines, tackle, etc., in rem, et al., Defendants.**

**LUCKENBACH STEAMSHIP CO., INC., Plaintiff, Oriente Commercial, Inc., et al., Intervenors,**

**v.**

**The American Flag Vessel the M/V FLORIDIAN, her engines, tackle, appurtenances, in rem, and Marine & Marketing International Corp., in personam, Defendants.**

**GULF OIL TRADING COMPANY, Plaintiff, Norfolk Shipbuilding & Drydock Corp., and McGrath Associates, Inc., Intervenors,**

**v.**

**M/V FLORIDIAN, her engines, boilers, etc., tackle, and other appurtenances, et al., Defendants.**

Civ. A. Nos. 5–73–N, 9–73–N and 176–73–N.

United States District Court, E. D. Virginia, Norfolk Division.

March 25, 1974.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for plaintiff and intervenors Eagle, Inc., Hasler & Co., Tracor/Mas, Inc. and Norfolk Shipbuilding & Drydock Corp.

Brian P. Gettings, U. S. Atty., Norfolk, Va., and Anthony W. Gross, Dept. of Justice, Washington, D.C., for intervenor U. S.

Burt M. Morewitz, Newport News, Va., for intervenors Mike Cruz Machine Shop, Inc. and Don Julio Corp.

Seawell, McCoy, Winston & Dalton, Norfolk, Va., for defendant Containerships, Inc.

No appearance for other defendants.

Crenshaw, Ware & Johnson, Norfolk, Va., for plaintiff in Civ.A.No. 9–73–N.

Jett, Berkley, Furr & Heilig, Norfolk, Va., for intervenors Black & Decker, Inc. and Oriente Commercial, Inc.

Willcox, Savage, Lawrence, Dickson & Spindle, Norfolk, Va., for plaintiff in Civ.A.No. 176–73–N.

Vandeventer, Black, Meredith & Martin, Norfolk, Va., for intervenors in Civ.A.No. 176–73–N.

## MEMORANDUM

WALTER E. HOFFMAN, District Judge.

The M/V FLORIDIAN was a containership used in trade between the United States and Puerto Rico. The vessel was owned by Containerships, Inc. and bareboat chartered to Marine & Marketing International Corporation. Marine & Marketing became insolvent and the FLORIDIAN was thereafter sold at judicial auction. These consolidated actions are those of the numerous creditors whose claims have not been satisfied.

The *in rem* claims against the ship, which are now claims against the proceeds of the auction sale, far exceed the proceeds, and it is necessary to determine the validity and priority of the various claims.

The United States claims the principal and interest due under two preferred ship mortgages. The first preferred ship mortgage was assigned to the United States by the original mortgagee after the United States, as the insurer of the mortgage, paid the insured amount to the original mortgagee. The United States is the original mortgagee of the second preferred ship mortgage. The Ship Mortgage Act, 46 U.S.C. § 911 et seq., makes preferred mortgage liens first in priority of payment save for certain preferred maritime liens defined in 46 U.S.C. § 953 to include tort liens.

Oriente Commercial Company claims damages for the spoilage of meat shipped in a "reefer" or refrigerated truck trailer aboard the FLORIDIAN. Black and Decker, Inc. claims damages for the loss of several cases of tools shipped on board the FLORIDIAN, but not delivered. Rather than claiming these amounts as contract claims under the contract of carriage, both cargo claimants contend that they may choose to sue in tort so as to give their claims preferred maritime lien status under the Ship Mortage Act.

Don Julio Corporation and Mike Cruz Machine Shop, Inc. claim various amounts for repair work done to the FLORIDIAN. These claims are also made in tort rather than on the contract, the argument being that fraud or misrepresentation was committed by misleading the repairmen as to the true ownership of the vessel and as to the charterer's right to pledge the credit of the ship.

Numerous other *in rem* claims exist, but none of these are claimed to be preferred maritime liens superior to the preferred ship mortgages, and thus need not be considered if the government's claims are valid since the government's claims far exceed the proceeds of the sale.

The various claimants concede that there has been technical compliance with the requirements of the Ship Mortgage Act as to recording, but deny the validity of the government's claims on two bases. They contend that the preferred status of the first mortgage was lost when the government, as the insurer of the mortgage, paid the mortgage amount to the original mortgagee and took an assignment of the mortgage. In addi-

tion, they contend that the government is not a "citizen of the United States" as the Ship Mortgage Act requires the mortgagee to be in order for a ship mortgage to be a preferred ship mortgage, 46 U.S.C. § 922(a)(5).

46 U.S.C. § 1275 prior to its amendment in 1972 clearly contemplated assignment of the mortgage to the government after payment of the insurance obligation and the enforcement by the United States of the mortgage. The 1972 amendments eliminated the reference to assignments since, under the amended statute, the government would hold the security itself, thus obviating any need for an assignment.

46 U.S.C. § 961(d) provides: "No rights under a mortgage of a vessel of the United States shall be assigned to any person not a citizen of the United States without the approval of the Secretary of Commerce. Any assignment in violation of any provision of this chapter shall be void"; thus implying that assignments not in violation of the chapter are valid.

The general rule relating to maritime liens is that they may be assigned and the assignee has the same priority as the assignor had[1] and, absent any specific statutory prohibition, there is no apparent reason why preferred ship mortgages should not be similarly assignable, so long as the other requirements of the statute are met.

The second contention, that the United States may not be the mortgagee of a preferred ship mortgage because it is not a citizen of the United States, has been litigated and uniformly decided in favor of the government. The Southern Cross, 24 F.Supp. 91 (E.D.N.Y. 1938); The Northern No. 41, 297 F. 343 (S.D.Fla.1924).

Having thus held the government's *in rem* claims to be valid, the remaining question is whether any of the other claims are preferred maritime claims ranking in priority above the preferred mortgage claims of the United States.

Originally the claims of Mike Cruz Machine Shop, Inc. and Don Julio Corporation for repairs done to the vessel were presented in the form of claims arising out of a contract for the repair of a vessel. Such claims are within the admiralty jurisdiction and entitle the claimant to a maritime lien, 46 U.S.C. § 971; The General Smith, 17 U.S. (4 Wheat.) 438, 4 L.Ed. 609 (1819), but a maritime contractual lien is not a preferred maritime lien ranking above a preferred ship mortgage, 46 U.S.C. § 953. To give their claim preferred status the claimants have attempted to convert same into a tort claim, but a tort is only a maritime tort if it is a tort occurring on navigable waters.[2] Without a showing that the alleged fraud or misrepresentation occurred on navigable waters, no maritime tort is shown by the pleadings, Black Sea State S. S. Line v. Ass. of Int. Tr. Dist., 95 F.Supp. 180 (S.D.N.Y.1951); Kaufman et al. v. John Block & Co., Inc., et al., 60 F.Supp. 992, (S.D.N.Y.1945), and the claimants are left with an ordinary common law claim which cannot be enforced by a preferred maritime lien.

The cargo owners have similarly attempted to turn what normally would be a contractual claim into a tort claim based on the common law duty of a common carrier. The tort claim in such a

---

1. "Modern cases without exception assume that liens can be assigned; the former rule to the contrary, to the extent that it ever existed, was not so much rejected as forgotten." Gilmore & Black, The Law of Admiralty, § 9–21 (1957).

2. "Every species of tort, however occurring and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance." The Plymouth, 70 U.S. (3 Wall.) 20, 36, 18 L.Ed. 125 (1865), but see Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed. 2d 454 (1972); Crosson et al. v. Vance, 484 F.2d 840 (4 Cir. 1973), requiring some connection with traditional maritime activities beyond mere location for the tort to be maritime.

case would be maritime in nature, since it would presumably occur on navigable waters, and the sole issue is whether or not the cargo claimants may thus turn their contractual liens into preferred maritime liens.

No case is directly on point though several are analogous. In The John G. Stevens, 170 U.S. 113, 18 S.Ct. 544, 42 L.Ed. 969 (1898), a claim based on damage to a tow under a contract of towage was permitted to be presented as a claim in tort. Several cases have permitted tort claims for prepaid freight charges when the contemplated voyage was not undertaken, The Henry W. Breyer, 17 F.2d 423 (4 Cir. 1927);[3] Morrisey v. S. S. A & J Faith, 252 F.Supp. 54 (N.D. Ohio). In The Penobscot, 40 AMC 1217 (D.Mass.1940), the court, in dictum, referred to the issue:

> "But the priority of a maritime claim is a substantive right which the holder is entitled to assert. And there is much to be said in favor of allowing a claimant to 'build' his claim in tort, if he can do so, especially in cases involving a preferred mortgage, in view of the decision of the Supreme Court that the preferred status of the mortgage lien is not affected by the fact that the proceeds of the loan may have been used for purposes other than those of a maritime character. Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 55 S.Ct. 31, 79 L.Ed. 176, 1934 A.M.C. 1417."

Though these cases would seem to suggest that the cargo claimant could bring a tort action, it is perhaps equally significant that there is no case directly so holding.

One case, The St. Paul, 277 F. 99 (S. D.N.Y.1921), though again not directly on point, is notable for its discussion of the policies involved in ranking the various liens. In considering liens for services, damaged cargo, and prepaid cargo, the court ranked the prepaid cargo on a level with the services on the theory that both enabled the ship to undertake the voyage, but ranked the damaged cargo liens below the others, pointing out that the damaged cargo liens did not arise out of a contribution to the undertaking, and that cargo was invariably insured and thus better able to bear the loss.

While The St. Paul provides a rationale for distinguishing the *Breyer* and *Morrisey* cases from this case, the fact of insurance is not so helpful in distinguishing the cargo claims from that of the mortgagee for the mortgage is also commonly insured under the statutory insurance scheme.[4]

The underlying rationale for the maritime lien is to promote the extension of credit to the maritime industry by providing a security device that lessens the risks incurred by a person who extends credit to an industry whose assets are mobile, transient, and not easily determinable. Consistent with this rationale, preference should be given to those creditors who are in the poorest position to determine the solvency of the debtor.

The mortgagee is in a far better position than the cargo owner to inquire into and remain abreast of the financial affairs of the owner or others in possession of the vessel. His contact with the owner of the ship is of long duration and his financial "muscle" such that he may require disclosure of the financial affairs of the company. The cargo owner does not have these advantages. The first indication that he and other short term creditors of the ship may have as to the financial insolvency of the owners

---

3. One of the cargo claims in The Henry W. Breyer case was for loss of cargo, but this lien had preferred status because it arose prior to the completion of the recording and endorsement on the ship's papers of the mortgage. Morse Drydock and Repair Co. v. Northern Star, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082 (1925).

4. The amendment of the Ship Mortgage Act modifies, but does not eliminate, what is basically government insurance of qualified mortgages for up to 87.5% of the cost of the vessel.

may well be the attachment of the vessel by the mortgagee or other creditor. It is, at least from this point of view, desirable that the creditor most likely to have knowledge of the incipient insolvency of the owner act promptly to force payment, thus giving notice to the other creditors. If the mortgagee delays foreclosure, confident in the superior position of his lien, until such time as the debts far exceed the assets, many less preferred creditors will necessarily get nothing.

Countervailing these policy arguments, however, are the policies that Congress presumably desired to promote by its passage of the ship mortgage legislation.

 Both the creation of the preferred ship mortgage and the insurance of that mortgage by the United States reflect a congressional policy of promoting the financing of ship construction and purchase. To lessen the inducements provided by Congress, either by lessening the priority of the preferred ship mortgage or by assigning the government insurance program as a reason for subordinating preferred ship mortgages, would appear contrary to congressional intent.

Moreover, the question is not solely one of the relative priorities of the cargo claimant and the mortgagee. Liens for ship services, repairs and supplies are presently ranked below those of the preferred ship mortgagée, but above those of the cargo claimant. Raising the cargo lien above that of the preferred ship mortgagee also raises the cargo lien above the lien for services or supplies. Though a cargo claimant may almost always make out a case in tort since the common law duty of the common carrier is so broad, the service or supply lienor will only rarely be able to make out a case for a maritime tort.

Those left behind in priority are the very ones who contribute substantially on a benefit basis to the making of the voyage, who are almost certain to be uninsured and who are least able to ascertain the financial status of the vessel operators. The reasoning of The St. Paul, *supra*, makes a strong argument that these claims should be given greater priority over those for damaged cargo.

 Accordingly we hold that neither the cargo claims nor the repair claims are preferred maritime liens within the meaning of 46 U.S.C. § 953.

Counsel for the United States shall submit a judgment order in accord with this opinion.