**In the Matter of Pasquale ALBERTO a/k/a Pat Alberto t/a Alberto Meat Company, a sole proprietorship.**

**Bankruptcy No. 84–04579.**

United States Bankruptcy Court, D. New Jersey.

Dec. 20, 1985.

Fox, Rothschild, O'Brien & Frankel by Leonard P. Goldberger, Philadelphia, Pa., for Pasquale Alberto.

Weinberg & McCormick by Joseph A. McCormick, Jr., Haddonfield, N.J., for trustee.

Melnick, Morgan, Klein & Cettei by Donna L. Cettei, Haddonfield, N.J., for Maryland Nat. Bank and Jaccard Corp.

Semmes, Bowen & Semmes by David McI. Williams, David S. Musgrave, Baltimore, Md., for Maryland Nat. Bank.

Schlesinger, Schlosser, Foy & Harrington by Marvin E. Schlosser, Mount Holly, N.J., for Nash Cohen.

## ON MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

There are presently before the court two matters for consideration. The first is a Motion by Maryland National Bank seeking the following: relief from the automatic stay pursuant to 11 U.S.C.A. § 362 (West 1979 & Supp.1985), and reclamation of a 1982 41 foot Chris Craft Motor Yacht; to compel the Debtor to provide insurance on the yacht until it is surrendered, and for other equitable relief. The second matter is a Motion by Nash Cohen, pursuant to 11 U.S.C.A. § 362 (West 1979 & Supp.1985), for relief from the automatic stay and to require the Debtor to provide Nash Cohen with adequate protection of his interest in the subject yacht. The threshold question presented to the court is whether the creditors have the requisite perfected security interest in the yacht to support their motions for relief from the automatic stay. This court finds that neither Maryland National Bank nor Nash Cohen possesses a perfected security interest in the subject yacht under the Ship Mortgage Act, 1920. 46 U.S.C.A. §§ 911–984 (West 1975 & Supp. 1985). Additionally, this court holds that pursuant to 11 U.S.C.A. § 544 (West 1979 & Supp.1985), the Trustee of the bankrupt estate may avoid the security interests at issue, and may assert a position superior to those held by Maryland National Bank and by Nash Cohen.

The Debtor, Pasquale Alberto, filed a petition under Chapter 11 of the Bankruptcy Code on August 28, 1984. On April 26, 1985 the United States Trustee for the Districts of Delaware and New Jersey appointed Richard Berry the Trustee of the Debtor's estate. On July 24, 1985, by Order of this Court, the Chapter 11 proceeding was converted to a proceeding under Chapter 7 of the Bankruptcy Code. On August 6, 1985, the United States Trustee appointed Richard L. Berry Trustee of the debtor's Chapter 7 estate. One of the assets of this estate is a 1982 41 foot Chris Craft fiberglass motor yacht known as the "Miss Ellen Alberto." The facts as developed at trial follow.[1]

On April 24, 1983, the Debtor and Jackson Marine Sales Inc. entered into an "In-

---

1. The following constitute findings of fact pursuant to Bankruptcy Rule 7052.

stallment Sale Agreement—Security Agreement" (Agreement). Under the Agreement the total sale price of the subject yacht was $332,072.20. The sum of $115,000.00 was financed under the Agreement. Pursuant to the terms of the Agreement, Jackson Marine Sales Inc. assigned to Maryland National Bank, all of its right, title and interest in and to the Agreement. The assignment, by its terms, became effective upon delivery of the Agreement to Maryland National Bank or upon Maryland National Bank's payment of the purchase price of the boat. According to the Agreement, the buyer, Pasquale Alberto, granted to the seller;

> a security interest in the goods being purchased under this Agreement and in any accessories, equipment, appliances, fixtures or parts now or hereafter attached thereto (hereinafter collectively referred to as the "goods") and in any proceeds or replacements thereof, to secure payment and performance of Buyer's obligations under this Agreement.

Robert C. Shearer, an Assistant Customer Credit Officer for Maryland National Bank, testified at the June 21, 1985, hearing before this Court. He stated that the installment sales agreement was assigned to Maryland National Bank on April 24, 1983, and would have been sent to the Bank on that same day, at which time Maryland National Bank funded the purchase of the subject vessel.

On July 28, 1983, Nash Cohen loaned $70,000 to the Debtor, evidenced by a promissory note of that same date. On September 22, 1983, as security for the loan, the Debtor executed a Second Preferred Mortgage of Vessel on the yacht in favor of Nash Cohen. The agreement was recorded in the Clerk's Office of Burlington County, New Jersey, on September 29, 1983. Nash Cohen did not file a Uniform Commercial Code Financing Statement covering the subject yacht.

On January 6, 1984, the Debtor executed a "First Preferred Mortgage of Vessel" in favor of Maryland National Bank. On March 12, 1984, Maryland National Bank filed with the Secretary of State of the State of New Jersey a Financing Statement pursuant to N.J.Stat.Ann. § 12A:9–302 (West Cum.Supp.1985), covering the subject yacht.

Rose A. Giranda, a Senior Documentation Officer for the United States Coast Guard Office of Vessel Documentation in Philadelphia, Pennsylvania, also testified at the hearing before this court on June 21, 1985. Her testimony and the documents stipulated to at trial established the following.

On August 12, 1983, Yacht Registry, Ltd., a company retained by Maryland National Bank, submitted an application to the United States Coast Guard for documentation of the yacht "Miss Ellen Alberto" as a vessel of the United States. The application included the Bill of Sale for the vessel. The application was received by the Coast Guard on August 16, 1983. On November 23, 1983, the Coast Guard issued a notice of the award of an official number to the vessel. At that time, the Coast Guard sent a notice to Yacht Registry Ltd. directing it to submit a "Marking Certificate." The Coast Guard also returned the Bill of Sale, since the acknowledgment did not show the state and county where the acknowledgment was taken, and because the corporate acknowledgment was executed as if it was a personal acknowledgment. On December 7, 1983, Yacht Registry, Ltd. sent to the Coast Guard, a Certificate of Marking and the Bill of Sale for the yacht. These documents were received by the Coast Guard on December 9, 1983. On April 5, 1984, the Coast Guard issued a Certificate of Documentation of the "Miss Ellen Alberto" as a vessel of the United States. On April 9, 1984, Yacht Registry, Ltd., acting on behalf of Maryland National Bank, sent a letter, together with certain relevant documents, to the United States Coast Guard Vessel Documentation Office in Philadelphia, Pennsylvania, for the purpose of filing its First Preferred Mortgage of Vessel on the subject yacht. The documents were received by the United States Coast Guard Vessel Documentation Office on April 13,

1984. The mortgage on the vessel was not recorded, indexed and endorsed on the vessel's abstract of title until October 30, 1984, approximately two months subsequent to the filing of the Chapter 11 petition in this case.

On May 8, 1984, counsel for Nash Cohen sent his Second Preferred Mortgage of Vessel to the United States Coast Guard in Philadelphia, Pennsylvania, for recordation. On May 17, 1984, the Coast Guard sent a letter to counsel for Nash Cohen which stated that the mortgage as presented could not be recorded, and that there was already "a mortgage in file to be recorded." The mortgage of Nash Cohen was not recorded prior to the filing of the Chapter 11 petition.

■ The first issue to be resolved by this court is whether the perfection of the mortgage interests at issue is governed exclusively by the provisions of the Ship Mortgage Act, 1920, 46 U.S.C.A. §§ 911–984 (West 1975 & Supp.1985), or whether the provisions of the New Jersey Uniform Commercial Code must also be considered.

The Ship Mortgage Act, adopted in 1920, was designed as a comprehensive statute covering the effect of ship mortgages. Prior to its adoption, a mortgage could not be foreclosed on a ship in admiralty, nor could a debt evidenced by a mortgage be sued on in admiralty. Therefore, in ship foreclosure proceedings, a ship was sold subject to all maritime liens, since these liens could be executed only by the Admiralty Court. The existence of a mortgage was not a bar to the creation of subsequent liens. The Ship Mortgage Act, 1920, was designed to afford greater security to the holders of ship mortgages by granting them the right to proceed in admiralty. Furthermore, under the Act, ship mortgages obtain preferential status over all claims against the vessel except preferred maritime liens and expenses, and fees allowed and costs fixed by the Court. *See Walter*

*E. Heller & Company v. M/V Mr. Ed*, 270 F.Supp. 830, 832 (E.D.La.1967).

Section 30, subsec. C of the Ship Mortgage Act, 1920 provides:

(a) No sale, conveyance, or mortgage which, at the time such sale, conveyance, or mortgage is made, includes a vessel of the United States,[2] or any portion thereof, or the whole or any part of the property sold, conveyed, or mortgaged shall be valid, in respect to such vessel, against any person other than the grantor or mortgagor, his heir or devisee, and a person having actual notice thereof, until such bill of sale, conveyance, or mortgage is recorded in the office of the collector of customs of the port of documentation of such vessel, as provided in subsection (b) of this section.

(b) Such collector of customs shall record bills of sale, conveyances, and mortgages delivered to him, in the order of their reception, in books to be kept for that purpose and indexed to show—

(1) The name of the vessel;

(2) The names of the parties to the sale, conveyance, or mortgage;

(3) The time and date of reception of the instrument;

(4) The interest in the vessel so sold, conveyed, or mortgaged; and

(5) The amount and date of maturity of the mortgage.

46 U.S.C.A. § 921 (West 1975) (footnote added).

As of July 31, 1950, the Office of the Collector of Customs was transferred to the Secretary to the Treasury and the duties of that office were subsequently delegated to the Secretary to the United States Coast Guard. *See* "Historical Note" immediately succeeding 46 U.S.C.A. § 921 (West 1975).

Under 46 U.S.C.A. § 922(a) (West 1975 & Supp.1985), a valid mortgage becomes a

---

**2.** 46 U.S.C.A. § 911(4) (West 1975 & Supp.1985) defines vessel of the United States:

(4) The term 'vessel of the United States' means any vessel documented under the laws

of the United States and such vessel shall be held to continue to be so documented until its documents are surrendered with the approval of the Secretary of Transportation.

"preferred mortgage" upon compliance with the following statutory requirements:

(a) A valid mortgage which at the time it is made, includes the whole of any vessel of the United States (other than a towboat, barge, scow, lighter, car float, canal boat, or tank vessel, of less than twenty-five gross tons), shall, in addition, have, in respect to such vessel and as of the date of the compliance with all the provisions of this subsection, the preferred status given by the provisions of Section 953 [3] of this title, if—

(1) The mortgage is endorsed upon the vessel's documents in accordance with the provisions of this section;

(2) The mortgage is recorded as provided in section 921 of this title, together with the time and date when the mortgage is so endorsed;

(3) An affidavit is filed with the record of such mortgage to the effect that the mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditor of the mortgagor or any lienor of the mortgaged vessel;

(4) The mortgage does not stipulate that the mortgagee waives the preferred status thereof; and

(5) The mortgagee is a State, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States, or is a citizen of the United States, and for the purposes of this chapter the Reconstruction Finance Corporation shall, in addition to those designated in sections

888 and 802 of this title, be deemed a citizen of the United States.

(footnote added)

In the case at bar, the vessel, "Miss Ellen Alberto", was not registered as a vessel of the United States at the time of the granting of the two mortgages in issue. Accordingly, this Court must also consider Section 1012 of the Home Port Act of 1925, which provides:

No bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation (except bottomry), which includes a vessel of the United States or any portion thereof shall be valid in respect to such vessel against any person other than the grantor or mortgagor, his heirs or devisees, and any person having actual notice thereof, until such bill of sale, conveyance, mortgage, assignment of mortgage, or hypothecation is recorded in the office of the collector of customs at the home port of such vessel. Any bill of sale or conveyance of the whole or any part of a vessel shall be recorded at the home port of such vessel as shown in her new document.

46 U.S.C.A. § 1012 (West 1975). This statutory section is substantially similar to 46 U.S.C.A. § 921 (West 1975) of the Ship Mortgage Act, insofar as it provides that an unrecorded mortgage is valid only against the mortgagor or grantor and persons with actual notice of the mortgage.

It is uncontroverted that the yacht in question was registered as a vessel of the United States and thus that the provisions of the Ship Mortgage Act, 1920, are applicable to resolve the instant issues.

---

**3.** 46 U.S.C.A. § 953 (West 1975) provides as follows:

(a) When used hereinafter in this chapter, the term "preferred maritime lien" means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter; or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage.

(b) Upon the sale of any mortgaged vessel by order of a district court of the United

States in any suit in rem in admiralty for the enforcement of a preferred mortgage lien thereon, all preexisting claims in the vessel, including any possessory common-law lien of which a lienor is deprived under the provisions of section 952 of this title, shall be held terminated and shall thereafter attach, in like amount and in accordance with their respective priorities, to the proceeds of the sale; except that the preferred mortgage lien shall have priority over all claims against the vessel, except (1) preferred maritime liens, and (2) expenses and fees allowed and costs taxed, by the court.

In regard to the scope and applicability of Article 9 of the Uniform Commercial Code, N.J.Stat.Ann. § 12A:9–104(a) (West Cum.Supp.1985), provides:

This Chapter does not apply

(a) To a security interest subject to any statute of the United States such as the Ship Mortgage Act, 1920, to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property.

It is well established that the provisions of the Ship Mortgage Act, 1920, are exclusive only to the extent that the statute governs the rights of the parties. *See, e.g., Security Bank of Oregon v. Levens,* 257 Or. 630, 480 P.2d 706, 707 (1971); *Greater Providence Deposit Corp. v. Jenison,* 485 A.2d 1242, 1243 n. 1 (R.I.1984). Accordingly, if the Trustee, a party herein, had actual notice of the mortgages, or could be charged with notice, the exclusions contained in N.J.Stat.Ann. § 12A:9–104(a) (West Cum.Supp.1985) would not apply to the instant case. Instead, N.J.Stat.Ann. § 12A:9–302 (West Cum.Supp.1985–1986), the section of New Jersey's Uniform Commercial Code which establishes rules for the perfection of security interests governed by Article 9 of the Uniform Commercial Code, would be applicable to the instant case.

Maryland National Bank argues herein that the Trustee had actual notice of the Bank's mortgage as of August 28, 1984, the date of the filing of this Chapter 11 petition. The Bank further contends that this notice was sufficient to defeat the Trustee's ability, under the "strong arm" provisions of 11 U.S.C.A. § 544 (West 1979 & Supp.1985) to avoid the Bank's security interest.

Section 544 of the Bankruptcy Code provides in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Maryland National Bank, in imputing knowledge to the Trustee, relies primarily upon the procedures employed by the United States Coast Guard Office of Vessel Documentation in Philadelphia, Pennsylvania, in connection with the receipt and recordation of mortgages. These procedures, as testified to at trial by Rose Giranda, Senior Documents Officer of the United States Coast Guard Office of Vessel Documentation in Philadelphia, Pennsylvania, are as follows. The act of recordation consists of designating the date and time of recordation, stamping the mortgage, indexing the mortgage, endorsing the mortgage, and endorsing the abstract of title of the vessel. When mortgages and other relevant vessel documents are received by the United States Coast Guard Office of Vessel Documentation for recordation, they are put into a pending mortgage file until that time when the mortgage can be endorsed and entered onto the general index or abstract of title of the vessel. If an inquiry is

made regarding a vessel prior to that time when the mortgage can be entered, the Coast Guard will simply respond that a mortgage is pending. Documents received are filed by the date of receipt, not by the name of the vessel. Accordingly, when a request for information is made, the documentation officer must look through all pending files to determine whether any mortgages are pending.

In support of its position, the Bank relies upon the case of *In re Cirasuolo*, 48 B.R. 447 (Bkrtcy.N.D.N.Y.1985). In *Cirasuolo*, the debtors, prior to filing their bankruptcy petition, deeded property to a third party as security for a loan which was evidenced by a note. The deeds conveying title to the mortgagee had been recorded but the note had not been. The court held that the trustee was not a bona fide purchaser since, although the mortgage was improperly filed, under New York law the Trustee had constructive notice thereof by the filing of the deeds. The court noted, however, that the language in Section 544(a) of the Bankruptcy Code, establishing the rights and powers of the trustee " 'without regard to any knowledge of the Trustee or any creditor,' " originated out of a concern that actual knowledge might affect the trustee's status as a hypothetical judicial lien creditor, and further stated that " 'the trustee's status as hypothetical lien creditor should not be affected by any knowledge which he, *personally*, or any or all creditors may have.' " *Id.* at 450 (quoting *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982)). In this regard, the court relied on the Third Circuit opinion of *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982).

In *McCannon*, the trustee, asserting rights as a bona fide purchaser without notice, sought to void the equitable interest which a third party had in real property arising from a purchase agreement. The court held that the trustee was not a bona fide purchaser without notice. In so rul-

ing, the court determined that the purchaser's clear and open possession of a condominium unit, even in the absence of a recording, obligated the trustee under Pennsylvania state law to inquire into the possessor's claimed interest. The *McCannon* court, as the *Cirasuolo* court, distinguished between the trustee's position as a bona fide purchaser for value versus that of a hypothetical judicial lien creditor. The *McCannon* court stated:

> That the words 'without regard to any knowledge' were not meant by Congress to nullify all state law protections of holders of equitable interests is suggested both by the history of its inclusion in the statutory language and by other language within Section 544(a)(3). The reference to the trustee's or creditors' knowledge appears to have originated out of a concern that actual knowledge might affect the trustee's status as a hypothetical judicial lien creditor.... the trustee's status as a hypothetical lien creditor should not be affected by any knowledge which he, personally, or any or all creditors may have.

> \*    \*    \*    \*    \*    \*

> Viewed in the context of this history, congressional desire to disregard the trustee's knowledge of the debtor's previous transactions with various claimants is appropriately understood to respond to the Article 9 problems ... rather than to obliterate the rights of equitable owners in possession of real property.

679 F.2d at 16–17 (footnote omitted).

In the instant matter, the Trustee is asserting his rights as a hypothetical judicial lien creditor and a creditor with a writ of execution against the property of the debtor unsatisfied as of the date of the filing of the Chapter 11 petition under 11 U.S.C.A. § 544(a)(1) and (a)(2), which position is established without regard to notice.[4] Conse-

---

4. In support of its position, Maryland National Bank also relied upon the case of *The Tompkins*, 13 F.2d 552 (2nd Cir.1926). That case, however, dealt with the issue of notice to a purchaser, and thus is inapplicable to the instant matter.

In *Tompkins*, the attorney of a prospective purchaser of a vessel obtained an abstract of title covering the vessel. The abstract of title contained an encumbrance. Regardless of whether the purchaser of the vessel actually knew of the

quently, the Trustee cannot be said to have actual notice of the alleged security interest of Maryland National Bank so to make the provisions of the Uniform Commercial Code applicable. Therefore, this court finds that the provisions of the Ship Mortgage Act, 1920, are exclusive as to perfection of the security interests of Maryland National Bank and Nash Cohen.

█ The issue that must next be determined is whether Maryland National Bank and Nash Cohen perfected their mortgage interests prior to the filing of the Chapter 11 petition, so as to enable them to claim interests superior to those of the Trustee under Section 544 of the Bankruptcy Code.

Maryland National Bank claims that it perfected its interest by the filing of its mortgage with the Coast Guard on April 13, 1984. In support of this contention, the Bank relies on cases which this court finds distinguishable on their facts and not ultimately supportive of the Bank's position.

In the case of *Cunard S.S. Co. vs. S.S. Caribia*, 1972 A.M.C. 2310 (E.D.N.Y.1972), the holder of a Panamanian naval mortgage sought to establish the validity of its mortgage. In that case a mortgage instrument was filed at the public registry office of the Republic of Panama on April 18, 1969, where it was available for public inspection. On April 21, 1969, the vessel was attached. On May 7, 1969, the mortgage was recorded. The Court held that "[t]he critical act of registration must be found to be that which occurred on April 18, 1969, when the mortgage was registered and became available for public inspection." *Id.* at 2315. Two facts distinguish this case from the case at bar. First, based upon Rose Giranda's testimony, it is not clear that a mortgage is available for public inspection while it is in the United States Coast Guard's pending file. Moreover, it appears that the only information the Coast Guard may furnish at that time is that a mortgage is pending. Second, as the

Trustee in the instant case points out, the *Cunard* case construed Panamanian law, it did not involve the applicability of the Ship Mortgage Act, 1920.

Maryland National Bank also relies upon the case of *In re Sterling Navigation Co., Ltd.*, 31 B.R. 619, 1983 A.M.C. 2240 (S.D.N.Y.1983). In that case the court held that the 1966 amendments to Article 9 of the New York Uniform Commercial Code were not intended to change the pre-existing principle that a contractual maritime lien has priority over a Trustee's lien in bankruptcy proceedings, regardless of the lienholder's failure to comply with the Uniform Commercial Code filing requirements under Article 9. Again, however, this case did not construe the Ship Mortgage Act, 1920. Moreover, the case at bar does not involve the rights of a contractual maritime lienholder as against a trustee, but rather, it involves the rights of a trustee as against those of a holder of an alleged unperfected mortgage.

In the case of *The Fort Orange*, 5 F.Supp. 833 (S.D.N.Y.1933), the court construed provisions of the Ship Mortgage Act, 1920. In this case, certain bills of sale covering four vessels were recorded on May 5, 1926. The mortgage was recorded five minutes later and the vessels were documented as vessels of the United States fifteen minutes after that. On January 18, 1932, the mortgage trustee filed a bill in equity alleging defaults under the mortgage and a libel in admiralty. On July 13, 1932, the mortgagor corporation was adjudicated a bankrupt. The trustee argued that the mortgage recording was ineffective under the Ship Mortgage Act, 1920 because the vessels were not documented as vessels of the United States when the mortgage was recorded. The court, however, rejected this argument and held that the events of the same day should be treated as being done simultaneously. Again, the facts of that case, as well as the issues

encumbrance, the court determined that he was a purchaser with knowledge of the existence of title in another since his attorney had actual notice of the encumbrance. In the case before

this Court the Trustee's rights as a hypothetical judicial lien creditor, and an executing creditor, are established without regard to notice.

decided therein, are not particularly pertinent to our case. The issue at bar is not whether "Miss Ellen Alberto" was properly documented as a vessel of the United States when the mortgage of Maryland National Bank was recorded or when it was received by the United States Coast Guard. In *The Fort Orange* case, the mortgage documents were received and recorded on the same day; therefore, the issue of whether date of receipt or date of endorsement meets the recording requirements of the Ship Mortgage Act, 1920 was not considered in that case.

The Bank also relies heavily upon the case of *Merchant's National Bank of Mobile v. Ward Rig No. 7, Official No. 547149*, 634 F.2d 952 (5th Cir.1981) (*Merchant's*). *Merchant's* dealt with a similar issue to that addressed in *The Fort Orange* case. On November 27, 1974, Coastal International Drilling Corporation purchased from Ward Drilling Company, Inc. three drilling rigs. Coastal International Drilling Corporation executed mortgages on the vessels in favor of Merchant's National Bank of Mobile to secure a loan of $1,400,-000. The vessels apparently were already documented as vessels of the United States. On November 27, 1974, Coastal International Drilling Corporation made application to the Coast Guard for vessel registry documents known as Consolidated Enrollments and Licenses for all three vessels. On the same date, the ship mortgages on two of the ships were received and recorded by the Coast Guard. On November 29, 1974, the mortgage on the third vessel was received and recorded and on that date a Consolidated Enrollment and License was issued for each vessel. Also on that date, the mortgages in favor of Merchant's National Bank were endorsed on each vessel's documents. In *Merchant's*, one of the issues before the court was whether a vessel, which had been sold and not yet registered, qualified as a United States vessel under the Ship Mortgage Act, 1920, specifically, whether the subject vessels had lost their status as vessels of the United States for two days, from November 27, 1974, until November 29, 1974.

The court established that the status of ships as vessels of the United States is held until the documents are surrendered. Accordingly, the court concluded with respect to the subject vessels,

> We are convinced that when the vessel is documented the action is effective retroactive to the date and time the application was filed. We further conclude that the events which transpired on November 27, 1974, absent a showing to the contrary, took place simultaneously and, as necessary within the simultaneous-action setting, were properly sequenced to give validity to the acts.

*Id.* at 956. The *Merchant's* case dealt with documentation of a vessel as a vessel of the United States and not with recordation of mortgages, the issue presently before the court. The Court in *Walter E. Heller and Company v. M/V MR. ED*, 270 F.Supp. 830 (E.D.La.1967), a case which also dealt with the issue of when a vessel ceases to become a vessel of the United States, noted that a preferred ship mortgage under Section 30, subsec. C of the Ship Mortgage Act, 1920, 46 U.S.C.A. § 921, is not valid against third persons until it is *recorded* in the Office of Collector of Customs. *Id.* at 834. (emphasis added) (citing 46 U.S.C. § 921 and § 953(a)).

In the present case, it is clear that the mortgage of Maryland National Bank was neither recorded nor endorsed until October 30, 1984. Pursuant to Rose Giranda's testimony, the Coast Guard documentation officer, once all requirements for recordability have been met, the Coast Guard will at the same time record the mortgage by designating the date and time of recordation, stamping the mortgage, indexing the mortgage, endorsing the mortgage and endorsing the abstract of title of the vessel.

This Court finds the case of *Morse Dry Dock & Repair Company v. The Northern Star*, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082 (1926), to be controlling. In that case, the petitioner sought to enforce a lien for repairs made on The Northern Star, a vessel. Another party, Luber, claimed that a mortgage had been executed and recorded

on August 11, 1920. A certified copy of the mortgage had been kept with the ship's papers from September 23, 1920, evidencing this mortgage. However, the mortgage was not endorsed on the ship's papers until June 27, 1921. The repairs had been made between November 7 and November 14, 1920, after the mortgage was executed but before it was endorsed on the ship's papers. Justice Holmes held that the language of the Ship Mortgage Act, 1920, which granted preferred status to mortgages which were "indorsed upon the vessel's document in accordance with the provisions of this section" prevented the mortgage from taking precedent over the lien. He stated:

> Obviously the statute taken literally may work harshly if by any oversight or otherwise the collector does not do his duty, and excellent reasons could be found for charging the petitioner with notice of a document that both was recorded and was kept with the ship's papers. But the words of the statute seem to us too clear to be escaped. The mortgage is made preferred only upon compliance with all the conditions specified, one of which is indorsement, and the maritime lien is preferred if it arises before the recording and indorsement of the mortgage. We see no room for construction, and there is nothing for the courts to do but to bow their heads and obey.

*Id.* at 555–56, 46 S.Ct. at 590.

The holding in the *Morse Dry Dock* case was followed by the Third Circuit Court of Appeals in the case of *Hercules Co., Inc. v. The Brigadier General Absolom Baird,* 214 F.2d 66 (3rd Cir.1954). That case involved a libel in rem action wherein a repairman sought to assert a maritime lien for repairs furnished to the steamship Brigadier General Absolom Baird. A mortgage on the vessel was held by Mr. Rex Murdock. The mortgage was recorded in the Custom House in New York City the day before the repairs were ordered and three days before the repairs began. The mortgage, however, was not shown to have been endorsed upon the vessel's documents. The Third Circuit Court of Appeals, holding that the mortgage was not a "preferred mortgage" under the Ship Mortgage Act, 1920, and that it could not therefore defeat the repair lien, stated:

> We think that *Morse Drydock & Repair Co. v. Steamship Northern Star,* 1926, 271 U.S. 552, 46 S.Ct. 589, 70 L.Ed. 1082, is dispositive of this phase of the case. The language of the mortgage in that case was almost identical with that of the mortgage here, and the Supreme Court said that the most that such terms could do was postpone the repairman's lien to that of the mortgage, if it was a "preferred mortgage." The Court went on to hold that even though the mortgage was recorded in the Custom House as required by the Ship Mortgage Act, it was not a "preferred mortgage," within the meaning of the Act and, thus, could not defeat the repair lien, because it was not endorsed on the vessel's documents as required by Section 922. In our case the mortgage was recorded with the collector of customs, but it was not shown to have been endorsed upon the Baird's documents. Those documents were not produced by the claimant, whose burden it was to do so if it was to have advantage of the Act. The mortgage relied upon by claimant thus was neither a bar to the creation of the lien nor did it take preference over the lien.

214 F.2d at 73 (footnotes omitted).

Based on the holding in *Morse Dry Dock, Hercules Co. Inc.* and *Walter E. Heller & Co.,* this court concludes that Maryland National Bank did not perfect its mortgage prior to the filing of the Debtor's bankruptcy petition.

■ Maryland National Bank makes the equitable argument that it did all that it could by sending the mortgage documents to the Coast Guard and that the Bank was not responsible for the delay in recording the mortgage. While it may be that Maryland National Bank had no control over the events between April, 1984, and October, 1984, the court notes that there was a substantial delay between the assignment

of the original installment sales agreement to the Bank and the date that the Bank sent its mortgage documents to the Coast Guard. It was established at trial that the original security agreement of April 24, 1983, was assigned to Maryland National Bank on the same date. The First Preferred Mortgage of Vessel was not executed in favor of the Bank until January 6, 1984. Application for registry as a vessel of the United States was not sent to the United States Coast Guard by Yacht Registry, Ltd., the Bank's agent, until August 12, 1983. It appears from several of the cases cited by the Bank, *see, e.g., The Fort Orange,* that a mortgage can be executed and recorded, and a vessel can be registered as a vessel of the United States on the same date. However, in this case, the Bank waited until August 12, 1983, to apply to the United States Coast Guard for registration of the "Miss Ellen Alberto" as a vessel of the United States. It then waited until April 9, 1984, four days after the vessel was documented as a vessel of the United States, to send its First Preferred Ship Mortgage documents for filing to the Coast Guard. It was established at trial that the backlog at the Coast Guard had existed for some time. Maryland National Bank should have been aware of these backlogs. Consequently, had the Bank acted more swiftly in registering the vessel and in sending its mortgage papers to the Coast Guard, the Bank may have perfected its mortgage lien prior to the filing of the Chapter 11 petition.

The Trustee, in support of his position, claims that Maryland National Bank will not be without a remedy if the court denies the relief presently being sought by the Bank. The Trustee contends that the Bank may institute a cause of action against the Coast Guard under 46 U.S.C. § 941(c). Section 941(c) provides in relevant part:

(c) If any person enters into any contract secured by, or upon the credit of, a vessel of the United States covered by a preferred mortgage, and suffers pecuniary loss by reason of the failure of the collector of customs, or any officer, employee, or agent thereof, properly to perform any duty required of the collector under the provisions of this chapter, the collector of customs shall be liable to such person for damages in the amount of such loss.

Maryland National Bank, in response to the Trustee's allegation, asserts that § 941(c) may not be applicable under the instant circumstances. The Bank's position is that § 941(c) is intended to protect only persons relying upon the credit of a vessel after a preferred mortgage has been processed by the Coast Guard, and not persons who hold a preferred mortgage. Whether Maryland National Bank may proceed against the Coast Guard under 46 U.S.C. § 941(c) is an equitable consideration which does not affect this court's decision regarding the Bank's compliance with the mandates of the Ship Mortgage Act, 1920, which, as Justice Holmes asserted in the *Morse Dry Dock* case, must be construed strictly.

Maryland National Bank argues that even if the Trustee is found to have superior rights in the subject boat under Section 30, subsec. C of the Ship Mortgage Act, 1920, 46 U.S.C.A. § 921, or Section 1012 of 46 U.S.C., the Bank would nonetheless prevail over the Trustee. The Bank asserts that as of October 30, 1984, it possessed a valid preferred mortgage pursuant to Section 30, subsec. D of the Ship Mortgage Act, 1920, 46 U.S.C.A. § 922, and that according to Section 30, subsec. M of the Ship Mortgage Act, 1920, 46 U.S.C.A. § 953, the preferred mortgage was subordinate only to certain specified preferred maritime liens. The Bank concludes that since the Trustee's claimed judicial lien under Section 544(a)(1) of the Bankruptcy Code is "non-maritime," it cannot prevail over the Bank's preferred mortgage. The court finds that this argument by the Bank is misplaced. Section 922 establishes the priorities among maritime liens and valid preferred mortgages when a mortgaged vessel is sold to enforce a preferred mortgage lien in a suit *in rem* in admiralty. In the case at bar, the Trustee is an ideal lien creditor. The Trustee's position is that the Bank did not adequately perfect its security interest in the yacht until October 30, 1984, approximately two months after the filing of the bankruptcy petition. Consequently, the Trustee claims that pursuant

to 11 U.S.C. § 544(a), he has the rights and powers of a judicial lien creditor and an executing lien creditor with a writ of execution returned unsatisfied as of the date of the filing of the petition, and thus his lien has priority over the interest of the Bank in the subject yacht.

It is well established that a creditor who fails to perfect à security interest prior to the filing of a petition in bankruptcy is subordinate to the Trustee who stands as a hypothetical ideal lien creditor under Section 544(a)(1) of the Bankruptcy Code. *See, e.g., In re Mayfield,* 22 B.R. 423 (E.D.Tenn. 1982); *In re Munsey Corporation,* 10 B.R. 864, 7 B.C.D. 674 (E.D.Pa.1981).

■ Maryland National Bank also argues that the automatic stay provisions of Section 362 of the Bankruptcy Code should not stay the Coast Guard's performance of ministerial acts, specifically, the recording, indexing and endorsing of the Bank's mortgage pursuant to Section 30, subsec. D of the Ship Mortgage Act, 1920, 46 U.S.C.A. § 922. The Bank claims that Section 362 stays the acts of creditors, not the acts of independent third parties such as the Coast Guard. Alternatively, the Bank contends that §§ 546(b) and 362(b)(3) of the Bankruptcy Code permit post-petition perfection of the Bank's lien under the Ship Mortgage Act, 1920, and limit the Trustee's rights and powers under Section 544. The court does not find the Bank's arguments persuasive. Sections 362(b)(3) and 546(b) provide for post-petition perfection in cases where applicable non-bankruptcy law allows an interest holder to perfect an interest in property and allows that perfection to be effective

against previously acquired rights in such property.[5] Maryland National Bank has made no showing that the Ship Mortgage Act, 1920, the only applicable law in the case at hand, provides that perfection relates back to the date the Coast Guard received the mortgage or to the date the Bank acquired an interest in the property. Section 362(a)(4) of the Bankruptcy Code, which is a broad automatic stay provision, explicitly stays "any act to create, perfect, or enforce any lien against property of the estate." 11 U.S.C.A. § 362(a)(4) (West 1979 & Supp.1985). Furthermore, Section 362(a)(5) of the Bankruptcy Code stays "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C.A. § 362(a)(5). *See In re Munsey Corporation,* 10 B.R. 864, 7 B.C.D. 674, 675–676 (E.D.Pa.1981). Accordingly, actions by the Coast Guard for the benefit of Maryland National Bank would be stayed.

Based upon the foregoing, the Court finds that Maryland National Bank did not perfect its security interest in the "Miss Ellen Alberto" as of the date of the filing of the bankruptcy petition as required under the Ship Mortgage Act, 1920, and that the rights of the Trustee as a judicial lien creditor and executing lien creditor with a writ returned unsatisfied under Section 544 of the Bankruptcy Code are superior to the rights of the Bank in the subject yacht and the Trustee may avoid the Bank's security interest in the vessel. Similarly, there is no question that as of the date of the filing

---

**5.** 11 U.S.C.A. § 362(b)(3) (West 1979 & Supp. 1985) provides:

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. § 78eee(a)(3)), does not operate as a stay—

(3) under subsection (a) of this section, of any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of this title. Furthermore, 11 U.S.C.A. § 546(b) (West Supp. 1985) provides:

(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

**144**

of the bankruptcy petition, Nash Cohen failed to perfect his lien in the yacht in accordance with the Ship Mortgage Act, 1920. The mortgage documents which Mr. Cohen submitted to the United States Coast Guard for recording on May 8, 1984, were returned by the United States Coast Guard on May 17, 1984, due to deficiencies in the subject documents. Accordingly, Nash Cohen held an unperfected security interest in the yacht which is inferior to the interest held by the Trustee, and which security interest the Trustee may avoid under Section 544 of the Bankruptcy Code.

Accordingly, both Motions presently before this Court are denied.

An order has been entered on September 23, 1985, consistent with this opinion.