In re WHITE BEAUTY VIEW, INC.
Guccini, Inc., Debtors.

NORTHEASTERN BANK OF PENN-SYLVANIA, and Samco,
Inc., Plaintiffs,

v.

George E. CLARK, Jr., Trustee; U.S. Department of Treasury Internal Revenue Service; Commonwealth of Penna., Department of Revenue; Commonwealth of Penna., Department of Labor; Raymond C. Carrick, II; Roche Supply, Inc.; Gumble Brothers, Inc.; Hawley Bank; Wayne County Bank and Trust Co.; Amerigas, Inc. and First State Bank, Defendants.

Bankruptcy Nos. 5–83–00543,
5–83–00544.
Adv. No. 5–86–0063.

United States Bankruptcy Court,
M.D. Pennsylvania.

Jan. 21, 1988.

Stephen G. Bresset, Honesdale, Pa., for White Beauty View.

Jeffrey S. Treat, Honesdale, Pa., for Guccini, Inc.

Stuart D. Gibson, U.S. Dept. of Justice, Tax Div., Washington, D.C., Stephen L. Brandwene, Collections Unit, Harrisburg, Pa., J. Dennis Faucher, Philadelphia, Pa., for Northeastern Bank and Samco, Inc.

Ronald M. Bugaj, Honesdale, Pa., for Gumble Bros., Inc.

Myles R. Wren, Scranton, Pa., for Hawley Bank.

Robert H. Knauss, Valley Forge, Pa., for Amerigas.

George E. Clark, Jr., McHale & Clark, Scranton, Pa., trustee of estate.

## OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

The Trustee commenced this proceeding for summary judgment in an action to reform a mortgage and compel the transfer of property held by the Trustee. Additionally, Defendant Hawley Bank has entered a Motion to Dismiss the Complaint against the Trustee. For the reasons provided herein, we grant the Trustee's requested relief and deny the Motion for dismissal of the complaint entered by the Defendant Hawley Bank.

## FINDINGS OF FACT

After reviewing the transcript of the hearing on these issues and the briefs and other documents submitted by the parties, we make the following findings of fact which are taken in part or whole from the said briefs. At a hearing conducted on December 8, 1987, all parties agreed to the facts. (N.T. 9).

1. White Beauty View, Inc. and Guccini, Inc. (hereinafter WBV) filed petitions for relief under Chapter 11 of the Bankruptcy Code on October 13, 1983.

2. The matters were converted to a proceeding under Chapter 7 on December 13, 1985.

3. Defendant Trustee was appointed in this matter on December 17, 1983.

4. In approximately November 1978, the two controlling shareholders and officers of the debtors sought financing to construct improvements on the premises of WBV. In early 1979, Northeastern Bank of Pennsylvania (Northeastern) and the officers agreed that the Bank would lend the debtor $2,200,000 in tax-free, industrial development authority financing (IDA Financing).

5. In the winter and spring of 1979, officers of WBV requested additional financing from Northeastern, which agreed to extend a loan for the sum of $400,000.

6. It was agreed between the parties that the $400,000 loan was to be secured by a mortgage (conventional mortgage) from the debtors covering all property owned by the debtors.

7. A commitment letter dated January 16, 1979, required the debtors to provide Northeastern with a certified survey of the premises to be mortgaged.

8. Shortly before the scheduled closing on the IDA Financing and the $400,000 loan, Northeastern waived its requirement that it be provided with a certified survey of the property.

9. On September 1, 1985, Northeastern was relieved from any obligations under the automatic stay of Section 362 of the Bankruptcy Code and proceeded with foreclosure on the conventional mortgage.

10. On December 11, 1985, the nominee of Northeastern purchased the property covered by the conventional mortgage at a Sheriff's Sale.

11. In 1986, Northeastern commissioned a survey of the property purchased by its

nominee. Upon completion of the survey, Northeastern discovered that certain pieces of property were not contained in the legal description of the property on which the $400,000 conventional mortgage was granted.

12. On August 13, 1980, WBV borrowed the sum of $130,000 from Hawley Bank, granting to Hawley Bank a security interest in property not covered by the conventional mortgage of Northeastern.

## DISCUSSION

Federal Rule of Civil Procedure 56, which is incorporated by Bankruptcy Rule 7056, provides that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. As the Third Circuit of Appeals recently stated, the motion "may only be granted only if, as a matter of law, viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor." *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); accord, *Goodman v. Mead Johnson and Co.*, 534 F.2d 566 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *In re H & H Beverage Distributors, Inc*, 65 B.R. 243 (Bankr.E.D. Pa.1986); *In re Paolino*, 75 B.R. 641 (Bankr.E.D.Pa.1987). In reaching a decision on the motion for summary judgment, the court may consider the pleadings, depositions, answers to interrogatories, admissions and affidavits submitted by or on behalf of the parties. Fed.R.Civ. 56.

The issues presented for resolution in this matter deal with the ability to reform a mortgage and the power of the Trustee under § 544 of the Bankruptcy Code. Section 544 is commonly referred to as the Trustee's Strong Arm Clause. Such reformation if allowed, would permit the Plaintiff, Northeastern, to include an additional description of property not included in its originally recorded mortgage.

It is settled that this is a question that must be answered under the laws of the Commonwealth of Pennsylvania. *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed. 2d 136 (1979). It can be said that Pennsylvania follows the general rule: when parties to a contract have made a mutual mistake such that their written contract fails to accurately express their intentions, the court will rescind the contract, abate purchase price, or reform the writing to express their intended agreements. *Thrasher v. Rothrock*, 377 Pa. 562, 105 A.2d 600 (1954); *Sanford–Day Iron Works v. Fancy Hill Coal Co.*, 321 Pa. 204, 183 A. 770 (1936); *Montgomery v. Levy*, 406 Pa. 547, 550, 177 A.2d 448, 450 (1962); *General Refrigerator & Store Fixture Co. v. Fry*, 393 Pa. 15, 18–19, 141 A.2d 836, 838 (1958); *Thrasher v. Rothrock, supra; T.W. Phillips Gas & Oil Co. v. Kline*, 368 Pa. 516, 518, 84 A.2d 301 (1951).

Since this issue has received the attention of a number of writers in other jurisdictions, it is useful to recite their opinions as to the issues presented in such a case.

*In re Cunningham*, 48 B.R. 509, 512 (Bankr.M.D.Tenn.1985), outlines what effect the appointment of a Trustee has when the issue is one of reformation of a deed of trust.

"However, this rule does not apply when third parties have acquired an interest in real property omitted from a deed without notice of the original grantee's adverse claim. In case of mutual mistake, relief is afforded against those who claim under the grantor except against those who by reason of being bona fide holders for value without notice have an equity superior to the grantee. Such a third party is the trustee in Bankruptcy who under 11 U.S.C. § 544(a) has the rights of a bona fide purchaser for value without notice."

We find nothing in the present situation that would cause us to reject the reasoning cited above. Additionally, this reasoning was first advanced in the matter of *In re Hunt*, 18 B.R. 504 (Bankr.E.D.Tenn.1982) in a situation similar to the instant one. Here, the Trustee's rights have intervened and reformation of the mortgage between

the debtors and Northeastern cannot be granted.

Plaintiffs have raised as a counter-argument to the rights of the Trustee the issue of notice and constructive notice as to their rights in the property to which they seek to add to the mortgage. Again looking to the opinions of those writing on the issue previously the following is found:

"Under this section § 544 the trustee may defeat a claim against the debtor's estate if under the applicable state law, a hypothetical bona fide purchaser of real property in question would have prevailed over the claim as of the date of the bankruptcy filing. *In re Dlott,* 43 B.R. 789, 792–793 (Bankr.D.Mass.1983). The phrase 'without regard to any knowledge of the trustee or any creditor' appearing in § 544(a) meant that any actual knowledge that the trustee might have had of competing interests will not prevent the trustee from asserting the rights of a hypothetical purchaser without such knowledge. Several recent bankruptcy court decisions have denied motions to reform deeds based on the trustee's powers as set forth in 11 U.S.C. § 544(a)(3). *In re Cunningham,* 48 B.R. 509 (Bankr. M.D.Tenn.1985); *In re R & J Construction Co.,* 43 B.R. 29 (Bankr.E.D.Mo. 1984); *In re Boardwalk Development Co., Inc.,* 72 B.R. 152 (Bankr.E.D.N.C. 1987)."

In the present case, the powers of the Trustee having been set in motion by the filing of the bankruptcy of the debtor, plaintiffs cannot now be granted the opportunity to reform their mortgage.

It must be noted at this point that Plaintiffs have cited numerous times the case of *McCannon v. Marston,* 679 F.2d 13 (3rd Cir.1982) concerning the powers of the Trustee under the provisions of § 544(a) ("the strong arm clause"). It should be clearly pointed out that plaintiffs are correct in their statement of the law as presented in that case. However, the matter before us is readily distinguishable from those of *McCannon, supra.* In that case, the powers of the Trustee were held to be invalid due to his being on notice as

to the rights of another party. This notice being that the party which defeated the Trustee's power was in *actual possession of the property in question.* (Emphasis supplied). In the present matter, Northeastern was *not in actual possession of the property* when the Trustee was appointed. Additional research conducted reveals that in the cases citing *McCannon, supra,* there exists a common element. The common element is that in each incident the notice that the Trustee was provided was one of clear and open possession [See *In re Matter of Pasquale Alberto,* 66 B.R. 132 at 138 (Bankr.D.N.J.1985)], or was on constructive notice sufficient to indicate the existence of a claim of possession by another. *In re R.A. Beck Builders, Inc.,* 66 B.R. 666 at 671 (Bankr.W.D. Pa.1986).

Such is not the case here as Northeastern was not in possession of the property at the time of the bankruptcy filing, nor was it in possession of the property when the Trustee was appointed. In a light most favorable to the Plaintiffs and the documents submitted, it cannot be held that the Trustee was on actual or constructive notice of Northeastern's rights in the property, by its (Northeastern) being in open and actual possession or constructive notice of possession.

Again, in a light most favorable to the Plaintiffs, all the cases from the Commonwealth of Pennsylvania to which he directs our attention focus on the key element that the property in question was in the clear and open possession of the other party or the other party was engaged in an activity that would place another on constructive notice as to a claim of possession of the property.

Plaintiffs' counsel directs our attention to two cases of the Commonwealth of Pennsylvania as supportive of his position that constructive notice should be assigned to the Trustee in this matter. The first is *Andrew E. Dusick v. Ifor G. Morgan,* 25 Northumberland Legal Journal 18 (1953). In this matter the issue dealt with the knowledge of a pre-existing sales agreement by a subsequent purchaser of the property. The court at page 24 states:

"It is a well settled general rule, in determining whether a purchaser had notice of outstanding equities so as to preclude him from being entitled to protection as a bona fide purchaser, that if there be circumstance which in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will have made that inquiry, and will be charged with notice of every fact which that inquiry would give him. 27 R.C.L., p. 711."

The Trustee in this proceeding accepted the debtor's estate as he found it on December 17, 1983, an estate which included a mortgage held by Northeastern and was bound by the description of the property as recorded by the Bank. He received (nor was entitled) to no greater rights than those held by the debtor. It could not be stated that the facts as presented to the Trustee on that date would lead him to believe or know that Northeastern, due to its own failure, had not included a description of all the property held by White Beauty View. The position in which Northeastern now finds itself, the holder of a mortgage with an incorrect description of property, is one that it alone created. Northeastern placed itself in this position when it waived its own requirement for a certified survey of the property as a condition of granting the $400,000 loan.

The second case to which Plaintiffs direct our attention is the case of *Howard A. Osman v. Harry F. Schrader*, 28 Northumberland Law Journal 85 (1956). Again, the issue is one dealing with a sales agreement, but with the secondary question of what constitutes constructive notice of possession. It is sufficient to note that the purchaser was held to have had constructive notice due to the cultivation of the land by another party. Again, the Court cited the language as provided in the above case. There is nothing presented in the facts of these two cases that would direct a purchaser to inquire whether a description of property on a recorded instrument was correct or incorrect. Neither case provided by the Plaintiffs suggests that individuals cannot rely upon recorded instruments.

The Trustee is and remains bound by the instrument as it was executed between the parties as to that property listed in Northeastern's description of the property included in the recorded instrument memorializing the conventional mortgage.

It is of little support to the Plaintiffs' position that he advances the issue that the Trustee was under a duty (p. 6 of Plaintiffs' Brief) to inquire of the management of Northeastern as to its interest in the property in question.

Section 544(a)(3) establishes the power of the Trustee under the so-called "Strong Arm Clause." Section 544(a)(3) reads in pertinent part:

(a) The Trustee shall have, as of the commencement of the case, and without **regard to any knowledge of the trustee or of any creditor**, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(3) a bona fide purchaser of real property other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists. (Emphasis added).

In direct opposition to the argument advanced by Plaintiffs, that the Trustee was under a duty to inquire as to the contents of the mortgage, is the following taken from the case of *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332 (7th Cir.1986). There the Court held that a debtor-in-possession's actual knowledge of mortgages is irrelevant under § 544. It is of interest to note that in reaching its decision, the Seventh Circuit Court of Appeals adopts the position of the Third Circuit. They cite the same case to which Plaintiffs have directed our attention, *McCannon, supra*. The Court stated as follows:

"We conclude that Congress did not intend Sandy Ridge's knowledge of the mortgage to prevent it from asserting the strong arm clause, because actual

knowledge is irrelevant under § 544(a). See *McCannon v. Marston,* 679 F.2d at 16–17; see also *In re Bygaph, Inc.,* 56 B.R. 596, 603 (Bankr.S.D.N.Y.1986); *In re Ernest & Assoc., Inc.,* 59 B.R. 495, 497–98 (Bankr.W.D.Tex.1985); *In re Matos,* 50 B.R. 742, 744–45 (Bankr.N.D.Ala. 1985); *In re Hartman Paving,* 745 F.2d [307] at 311 [4th Cir.1984] (Winter, C.J., dissenting)."

If the Trustee had in fact conducted such inquiry as suggested by Plaintiffs, it would not change the issue before us in this matter: "May a mortgage be reformed after the operation of § 544 has been set in motion?"

Having stated the view of others in this matter, we join them in denying reformation in this instance.

We, therefore, must also deny the motion for dismissal by Hawley Bank, as it will be mooted by this decision.

This opinion constitutes findings of fact and conclusions of law in the above matters pursuant to Bankruptcy Rules 7052 and Federal Rules of Civil Procedure 52.